Vincent F. Papalia, Esq.
Mark A. Roney, Esq.
**SAIBER LLC**
One Gateway Center, 13th Floor
Newark, NJ 07102
Telephone: (973) 622-3333
Facsimile: (973) 622-3349

Attorneys for the Borough of Roseland

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EAST COAST SANITATION CO., INC., | Case No. 09-30888 (DHS) |
| Debtor. | Honorable Donald H. Steckroth |

**MOTION FOR A DETERMINATION THAT THE AUTOMATIC
STAY DOES NOT APPLY TO THE BOROUGH OF ROSELAND
WITH RESPECT TO ITS AUTHORITY TO TERMINATE DEBTOR'S
CONTACT FOR WASTE AND RECYCLING HAULING OR,
ALTERANTIVELY, FOR RELIEF FROM THE AUTOMATIC STAY**

The Borough of Roseland ("Roseland"), by and through its undersigned attorneys, hereby moves for an order determining that the automatic stay of Section 362 of the United States Bankruptcy Code does not apply to Roseland's police and/or regulatory authority to terminate a waste hauling contract with debtor East Coast Sanitation Co., Inc. (the "Debtor") so as to protect the health and welfare of the residents of Roseland and prevent the creation of a public health hazard and nuisance due to Debtor's failure to perform its contractual obligations, or, alternatively, that "cause" exists for relief from the automatic stay (the "Motion").  In support of its Motion, Roseland states as follows:

{00588566.DOC}

## JURISDICTION

1.      This Court has jurisdiction over this matter under 28 U.S.C §§ 157 and 1334. Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are section 362 of the Bankruptcy Code and Bankruptcy Rule 4001(a).

## BACKGROUND

3.      On August 10, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtor has continued in possession of its property and is operating and managing its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.      No request has been made for the appointment of a trustee or an examiner in this case.

6.      No committee of unsecured creditors has been appointed.

7.      No Order providing for the Debtor's use of cash collateral to continue to operate its business has been entered in this matter.

## STATEMENT OF FACTS

**A.     Roseland Awards the Debtor the Contract**

8.      Roseland is a municipality located in Essex County, New Jersey with a population of approximately 5,300.

9.      In 2006, Roseland solicited bid proposals, due no later than April 6, 2006, for solid waste and recycling collection and disposal for a period of five (5) years.

10. Several proposals were received and on April 25, 2006, after due and proper deliberation, Debtor was selected as the successful bidder for the solid waste and recycling collection and disposal contract (the "Contract"). A copy of the Contract is attached as Exhibit A to the Certification of Mark A. Roney, Esq. (the "Roney Cert.").

11. Debtor began providing Roseland with services under the Contract on May 1, 2006.

12. Roseland began experiencing significant problems with Debtor under the Contract in early September 2009. Upon information and belief, the problems arose after a challenge to Debtor's successful bid and performance of its contracts, filed in the Superior Court of the State of New Jersey, by Suburban Disposal, Inc. ("Suburban") resulted in a multi-million dollar judgment against Debtor. Upon further information and belief, prior to the filing of these bankruptcy proceedings, Suburban had actively pursued the collection of its judgment against the Debtor.

    **B.    The Contact**

13. Pursuant to the Contract, the Debtor is required to collect residential, municipal, public and private school, day care centers and park and playground waste/refuse from two separate zones, twice a week. See Exhibit A, Sections 5.3.1, 5.3.6 and 5.5 of the Roney Cert.

14. Debtor is also required to collect limited amounts of commercial waste/refuse from two separate zones, twice a week as well as all public litter containers located throughout Roseland. Id. at Section 5.3.2, 5.3.3 and 5.5.

15. Under the Contract, all bulk waste must be collected once a month in each of Roseland's two collection zones. Id. at Section 5.3.4 and 5.5.

16. In addition to the waste/refuse collection and disposal, Debtor is obligated to collect Roseland's recycling in its two residential and municipal collection zones every Wednesday. Id. at Sections 5.3.8.3 and 5.3.8.4.

17. The collection of recycling materials requires the Debtor to conduct separate collection, on alternate Wednesdays, of commingled material and of old newspapers, mixed paper & old corrugated containers. See Exhibit A, Section 5.5(F) of the Roney Cert.

18. All collections under the Contract must be made between 8:30 a.m. and 6:00 p.m. Id. at 5.5(A).

19. In providing services to Roseland under the Contract, the Debtor is required to provide vehicles that are water tight, completely enclosed and compacting. The vehicles must be in good working order and must be constructed and maintained to reduce unnecessary noise, spillage and odor. Id. at Section 5.7.

20. Roseland has the right, at any time, to inspect all vehicles during the term of the Contract and Debtor must comply with all reasonable requests relative to the maintenance and repair of said vehicles and other equipment used in the execution of the Contract. Id. at Section 5.7(C).

21. Under the Contract, Debtor is in breach of its obligations if:

   a. If the Debtor fails to commence work in accordance with the Contract;

   b. If the Debtor abandons the work required under the Contract;

   c. If the Debtor abandons any portion of the work required under the Contract;

   d. If the Debtors fails to fully, properly, and in a good and workmanlike manner perform any or all of the conditions, covenants, agreements, contained within the Contract;

   e. If the Debtor without just cause reduces its working force to number which, if maintained, would be insufficient in the opinion of the

> Borough, upon advice of the Borough Administrator, continue or complete the work in accordance with the requirements of the Specifications, and if the Debtor fails or refuses to increase such working force when ordered to do so by the Borough Administrator within ten days of such order; or,
>
> f. If the Borough Council upon the advice of the Borough Administrator shall be of the opinion that the Debtor is not or has not been performing the Contract in good faith and in accordance with the terms of the Contract.

See Exhibit A, Section 4.10.1 of the Roney Cert.

22. Prior to terminating the Contract, Roseland is contractually obligated, under certain circumstances, to provide Debtor with notice of a hearing regarding the nature of the breach or breaches claimed and the opportunity to defendant against the claims of breach. Id. at Section 4.11. At the hearing, Debtor may be represented by counsel and has the right to have a certified court reporter present to transcribe the hearing. Id.

### C. Debtor's Breaches of the Contract

23. Beginning in early September 2009, Roseland began to experience a significant increase in the number of complaints made by its residents regarding Debtor's performance under the Contract. Based on these various and continuing complaints and the resulting related breaches of the Contract, sufficient grounds exist to terminate the Contract.

24. Debtor has breached the Contract by (without limitation);

   a. Failing to complete waste pick up at Roseland's public schools and apartment complexes;

   b. Failing to comply with Roseland's request to inspect its vehicles prior to beginning each day's collection;

   c. Comingling recyclable material and waste;

   d. Comingling waste from other municipalities with Roseland's waste and disposing the comingled waste with the Essex County Utilities Authority, utilizing Roseland's account and therefore at Roseland's expense;

  e. Failing to complete bulk pickup for September 9, 2009 resulting in waste remaining on Roseland's streets through and including September 24, 2009;

  f. Failing to complete collection by the within the time limitations of the Contract; and,

  g. Failing to properly equip vehicles. This failure has resulted in spillage and damage to Roseland and its resident's property.

See Certification of Gary R. Schall (the "Schall Cert.") at ¶¶3-12 and Exhibits A through E and F attached thereto and Exhibits B and C to the Roney Cert.

## RELIEF REQUESTED

25. By this Motion, Roseland seeks entry of an order determining that the automatic stay of Bankruptcy Code section 362 is not applicable to Roseland's exercising its police and/or regulatory power to terminate the Contract in order to protect the health and welfare of its residents or, alternatively, for an order granting Roseland relief from the automatic stay of Bankruptcy Code section 362 for "cause," pursuant to Bankruptcy Code section 362(d)(1), in order to allow Roseland the ability to invoke the contractual process for termination of the Contract, and to terminate the Contract upon the existence of sufficient contractual grounds.

## LEGAL ARGUMENT

### POINT I

**Roseland's Termination of the Contract is Exempt
from the Application of the Automatic Stay**

26. The scope of the automatic stay, while broad, is not all encompassing. There are numerous exceptions to the application of the automatic stay, including a governmental entity's exercise of its police and/or regulatory power.

27. The language of section 362 of the Bankruptcy Code expressly states that the imposition of the stay is not absolute, as it states:

> [e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302 or 303 of this title operates as a stay, applicable to all entities…
>
> …(b)(4) of the commencement or continuation of an action or proceeding by a governmental unit … to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulator power.

11 USC 362(a) and (b)(4)(emphasis added).

28. The purpose of section 362(b)(4) is to prevent a debtor from "frustrating necessary governmental functions by seeking refuge in bankruptcy court." See SEC v. Brennan, 230 F.3d 65, 71 (2nd Cir. 2000) (internal quotation and citations omitted. Therefore, where a governmental unit is suing a debtor or taking other action to prevent or stop fraud, protect the environment, protect consumers or take similar measures pursuant to its police power or regulatory laws, the automatic stay does not apply and is therefore of no effect. Id.; see also U.S. ex rel Fullington v. Parkway Hospital, Inc., 351 B.R. 280282-283 (E.D. New York 2006).

29. In determining whether the exception applies, Courts are not to engage in a review of whether the proposed exercise of police or regulatory power is legitimate as the limited authority vested to bankruptcy courts does not include scrutinizing the validity of every administrative or enforcement action brought against bankrupt entities. See Board of Governors v. McCorp. Fin., Inc., 502 U.S. 32, 40 (1991). Rather, Courts are to look only at the purpose of the law that the governmental unit is attempting to enforce to determine whether the exception applies. See Saftey-Kleen, Inc. v. Wyche, *et al.* (In re Pinewood), 274 F.3d 846, 865 (4th Cir. 2001). The exception applies if the purpose of the law is to promote "public safety and welfare" or to effectuate public policy. Id., *quoting* Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.), 128 F.3d 1294, 1297 (9th Cir. 1997).

30.     New Jersey has enacted a complex and highly regulated statutory scheme for municipal waste and recycling collection and disposal.  See N.J.S.A. 13:1E-1 *et seq.*; N.J.S.A. 40:66-1 *et seq.*; and, N.J.S.A. 40:66A-1 *et seq*.  The fact that the issue of the collection and disposal of solid waste is of the utmost public concern cannot be seriously debated as the New Jersey Legislature has found that it is "a matter of grave concern to all citizens and is an activity thoroughly affected with the public interest; that the health, safety and welfare of the people of this State require efficient and reasonable solid waste collection disposal…" N.J.S.A. 13:1E-2.  Municipalities that provide waste and recycling collection and disposal services to their residents, and any municipal service providers, are required to comply with all applicable statutes, regulations and ordinances regarding waste and recycling collection and disposal.

31.     In New Jersey, municipalities are charged with protecting maintaining order and protecting the public health, safety and welfare of its residents.  See N.J.S.A. 40:48-1 and 40:48-2.  It is within a municipality's general police powers to enact necessary ordinances, regulations or resolutions governing the collection and disposal of garbage.  See Pleasure Bay Apartments v. City of Long Branch, 66 N.J. 79 (1974).  Such control over the collection and disposal of garbage is "indispensable to public health and safety." Teagen Co. v. Borough of Bergenfield, 119 N.J. Super. 212, 224 (Law Division 1972) (citations omitted).  Here, Roseland has enacted ordinances regarding the collection and disposal of municipal waste and recycling and entered into the Contract with Debtor to carry out its police powers and regulatory authority.

32.     The Debtor has breached the Contract by, without limitation, (i) failing to collect waste and recycling as required under the Contract; (ii) impermissibly comingling waste and recycling; (iii) impermissibly comingling waste from East Orange with Roseland's waste; (iv) failing to provide properly equipped and operating vehicles; and, (v) failing to fully and completely comply with the contractually required inspections of its vehicles.

33. All of these problems and breaches lead to the inescapable conclusion that Roseland must take action to terminate the Contract to protect the health and welfare of its residents. Roseland's waste and recycling simply cannot sit out for days without being collected. The adverse consequences cannot be overstated and include an increase in pests and pest related accidents, as well as the creation of unsanitary conditions throughout Roseland. In short, the general health and welfare of Roseland's residents are in jeopardy if Roseland is not able to terminate the Contract.

34. Accordingly, it is clear that if Roseland were to take steps towards terminating the Contract, or actually terminating the Contract, it would be acting within its police and regulatory powers and promoting the public health and welfare of its residents and to effectuate the unquestioned public policy of providing proper waste and recycling services to its residents, as well as a clean and safe municipality. As a result, Roseland has the ability to terminate the Contract without being in violation of the automatic stay and Roseland is free to initiate any process under the Contract which may result in the termination of the Contract and/or to terminate the Contract without the necessity of stay relief.

## POINT II

### Cause Exists to Grant Roseland Relief from the Automatic Stay

35. In the event this Court determines that the automatic stay is applicable, relief from the automatic stay should be granted to permit Roseland to exercise its rights under the Contract and, if necessary and appropriate, terminate the Contract in furtherance of its police Powers.

36. It is well settled that there is no rigid test for determining whether sufficient cause exists to modify an automatic stay. See In re Continental Airlines. Inc., 152 B.R. 420, 424 (D. Del. 1993) citing Int'l Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.), 938 F.2d 731, 734-37 (7th Cir.1991). Rather, to determine whether stay

relief should be granted, the policies underlying the purpose of the automatic stay are compared to the competing interests of the debtor and movant. In comparing the policies and interests, Courts generally consider the following factors: "(1) the prejudice that would be suffered should the stay be lifted; (2) the balance of the hardships facing the parties; and (3) the probable success on the merits if the stay is lifted." Id.

37. Moreover, Courts are granted wide discretion in determining whether cause exists based on the "totality of the circumstances in each particular case." Baldino v. Wilson (In re Wilson), 116 F.3d 87 (3rd Cir. 1997) *citing* Trident Assocs. v. Metropolitan Life Ins. Co.(In re Trident Assocs.), 52 F.3d 127 (6th Cir.1995).

38. If relief from stay is not granted, the hardships to Roseland and its residents will be great. The Debtor's breaches of the Contract, as set forth in more detail above, clearly show that it cannot perform as required under the Contract, putting the health and welfare of Roseland's residents at risk. The Debtor has failed to show any ability to cure its prior breaches and appears to be financially incapable of performing under the Contract. Further, the Debtor's failure to obtain an order approving the use of cash collateral to continue its operations demonstrates that it simply does not have the financial ability to perform under the Contract.

39. Without relief from the automatic stay, in the event that Debtor continues to fail to fulfill its obligations under the Contract or ceases operations, Roseland will have no ability to terminate the Contract and hire a new waste hauler to deal with the immediate health and safety hazard which would be presented by a failure to collect and dispose of Roseland's waste and recycling.

40. If the Debtor were to, for example, cease operations, it is at least uncertain whether Roseland would have the ability to require its employees collect its municipal waste or immediately contract with another hauler to do so.[1]

41. The negative effect of failing to lift the automatic stay as to Roseland's authority to terminate the Contract is significant, to say the least. Conversely, the effect on the Debtor would be negligible and is limited solely to financial interests. The Debtor had the ability to prove, through action and performance, that it could provide the necessary services under the Contract as agreed. The Debtor has had almost two months of the "breathing room" afforded by its bankruptcy filing, but the problems with its operations are getting <u>worse</u> rather than improving, and the residents of Roseland continue to suffer the effects of Debtor's non-performance.

42. Without relief from the automatic stay, if the Debtor fails to perform or otherwise abandons its obligations under the Contract, Roseland will likely be forced to let waste and recycling sit curbside for a week or more until this Court can enter an order providing for stay relief and authorizing Roseland to terminate the Contract.

## **NOTICE**

43. Notice of this Motion has been given to the following parties, or in lieu thereof, to their counsel, if known; (1) the Debtors; (2) the Office of the United States Trustee for the District of New Jersey; and (3) those persons who have requested notice pursuant to Rule 2002

---

[1] Additionally, it is unlikely that Roseland would have the authority to require its other public employees to collect and dispose of the municipal waste while Roseland makes the requisite application to this Court for stay relief. Any attempt by Roseland to press its current employees into service collecting municipal waste will undoubtedly be meet with strong resistance, both legal and otherwise. To this end, Roseland has already had to take the unfortunate, but necessary, step to substantially reduce its workforce in this difficult economic time. To attempt to require these employees to now take on the responsibility of collecting municipal waste until a motion can be heard by this Court, and any appeals of said motion are exhausted, would simply be inequitable and have a particularly severe adverse impact on the municipality. Moreover, such efforts would most likely be contrary to its labor contract governing its public works employees.

of the Federal Rules of Bankruptcy Procedure. Roseland submits that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

44. No prior request for the relief sought in this Motion has been made to this or any other Court.

## CONCLUSION

**WHEREFORE**, Roseland requests that the Court enter an Order, in the form attached hereto, determining that the provisions of the automatic stay do not apply to Roseland's ability to terminate the Contract is not a violation of the automatic stay and Roseland is free to initiate any process under the Contract which may result in the termination of the Contract and to terminate the Contract without approval of this Court

Respectfully submitted,

By: /s/Mark A. Roney
    Vincent F. Papalia
    Mark A. Roney
    SAIBER LLC
    One Gateway Center, 13th Floor
    Newark, NJ 07102

Attorneys for the Borough of Roseland

Dated: October 8, 2009